

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

November 13, 1963

Honorable Joe Carter
Chairman
Texas Water Commission
P. O. Box 2311
Austin 11, Texas

Opinion No. C-176

Re: Various questions concerning
the construction of Article
7621b, Vernon's Civil Stat-
utes (injection wells for
industrial and municipal
waste).

Dear Mr. Carter:

In response to your request regarding the above cited
matter, we here examine the following questions posed by you.

1. Does Article 7621b, § 1(e) defining "Industrial and
Municipal Waste, " and § 1(h) defining "Injection Well," when
correctly interpreted, include all wells which are drilled or
used for the purpose of injecting, transmitting, or disposing
of oil field brines into any subsurface strata or stratum,
regardless of whether or not such strata or stratum is produc-
tive of oil or gas?

2. Does Article 7621b, § 2-c, when correctly interpreted,
provide that a determination by the Texas Water Commission to
the effect that "the proposed drilling of such injection well
and the injection of such salt water or other such waste into
such subsurface stratum will endanger the fresh water strata
in that area and that the formation or strata to be used for
such salt water or other waste disposal are fresh water sands,"
is binding on all State Agencies and others concerned to the
contents, scope and conclusions contained therein?

3. If the replies to 1 and 2 above are in the affirmative
(i.e., that Article 7621b includes all such wells regardless
of the nature of the subsurface stratum, and that a determina-
tion by the Texas Water Commission in accordance with § 2-c is
binding on all State Agencies and others concerned), are prior
permits which have been granted under Article 7621b, § 2-a with-
out a prior determination by the Texas Water Commission in
accordance with § 2-c void ab initio or otherwise made invalid
or voidable by any party or State Agency and/or judicial body?

4. If the reply to 3 above is in the affirmative (a)

what are the correct legal procedures available to the Water Commission by which it may effect review of the void and/or voidable injection operation permits concerned, and in the alternative, (b) what other legal procedures are available to effect review of the void and/or voidable permits if the Texas Water Commission is not authorized under the present statutes and law to effect such review?

In order to answer your first question we must look to Article 6029a, Vernon's Civil Statutes. In Attorney General Opinion No. WW-1465 Articles 6029a, and 7621b of Vernon's Civil Statutes were construed to be in pari materia and should be read together as constituting one body of law.

Examination of Article 6029a and 7621b shows that there is a distinction intended by the legislature as to when each act shall apply.

Article 6029a was intended to apply to drilling and producing operations, the primary purpose of which is the actual recovery of oil or gas. This is seen from the language used in the first paragraph of this Act:

> "The Railroad Commission shall also make and enforce rules, regulations and orders in connection with the drilling of exploratory wells and wells for oil or gas or any purpose connected therewith; the production of oil or gas; and the operation, abandonment and proper plugging of such wells . . ." (Emphasis added.)

This would include not only operations governing primary recovery, but also secondary or tertiary operations for recovery of oil or gas from an oil or gas stratum, either by by gas injection, water flood or liquified hydrocarbon sweeps.

On the other hand, examination of Article 7621b shows that it was intended to cover problems of disposal of salt water or other waste produced along with the oil or gas. This act was intended to establish a means whereby an oil operator could obtain authorization to drill or convert a well for the sole purpose of injecting the wastes produced along with the oil and gas he recovered.

This is amply shown from the caption of the act and in every applicable section of the act. The applicable part of

the caption reads:

> "Designating the Railroad Commission as the
> permit issuing agency for all wells for the injec-
> tion of waste arising out of the drilling for or the
> production of oil or gas."

Section I (e) defining waste corroborates the concept of
Article 7621b as covering problems of disposal only.

> "'Industrial and municipal waste' is any
> liquid, gaseous, solid or other waste substance
> or a combination thereof resulting from any pro-
> cess of industry, manufacturing, trade, or bus-
> iness or from the development or recovery of any
> natural resource . . ." (Emphasis added.)

Likewise, in Section 2-a governing the obtaining of permits
from the Railroad Commission under this act, we find the identi-
cal concept expressed.

> "Before any person shall commence the drilling
> of an injection well, or before any person shall convert
> any existing well into an injection well, for the pur-
> pose of disposing of salt water or other waste arising
> out of or incidental to the drilling or the producing
> of oil or gas, a permit . . ." (Emphasis added.)

Section 2-c covering the obtaining of a letter from the
Water Commission in no way controverts this concept.

> "Any person applying to the /Railroad/ Commission for
> a permit to inject salt water or other waste arising
> out of or incidental to the drilling or the producing
> of oil or gas . . ."

It therefore becomes obvious that where the purpose of
the injection well is to increase production from an oil or
gas bearing stratum Article 6029a applies, and only where the
purpose of the injection well is the disposal of salt water
or other waste resulting from oil or gas operations does Article
7621b apply.

In answer to your first question, therefore, we are of the
opinion that Article 7621b, Section 1 (e) defining "industrial
and municipal waste," and Section 1 (h) defining "injection
well," when correctly interpreted, include only those wells
which are drilled or used for the purpose of disposal and do

not include an injection well where the purpose of such well is to increase production from an oil or gas bearing stratum.

We now turn to your second question regarding the interpretation of Article 7621b, Section 2-c, which states as follows:

"Any person applying to the /Railroad7 Commission for a permit to inject salt water or other waste arising out of or incidental to the drilling for or the producing of oil or gas into a subsurface stratum shall submit with such application a letter from the Board /Texas Water Commission/ stating that the drilling of such injection well and the injection of such salt water or other such waste into such subsurface stratum will not endanger the fresh water stratum . . ."

In construing this section, we must construe the statute as a whole. 82 C.J.S. 691. It is obvious that the basic scheme of the statute is to give the Railroad Commission control of oil field waste and the Water Commission control of all other industrial and municipal waste. Sections 2b and 2c of Article 7621b provide that each agency, by letter, furnish the other with certain information in order that the permit issuing agency will be in a better position to carry out its delegated authority. We do not believe that the Legislature intended to give each agency a veto power over matters delegated to the other. The statute merely contemplates cooperation between the agencies in exchange of information.

Historically, the Railroad Commission has relied upon the Water Commission to advise it as to the depth of fresh water zones which should be protected. Before giving a permit to inject, the Railroad Commission for years has required that it be furnished with a letter from the Water Commission showing the depth as to which fresh water should be protected. It is quite proper to consider this history in construing the statute. 39 Tex. Jur. 229, Statutes, Sec. 122.

Reading the statute in the light of this background it seems clear that the legislature intended simply to codify a practice that has been followed with respect to disposal of oil field waste, and to provide a parallel system with respect to disposal of other industrial wastes.

It is evident to us that the Water Commission is expected simply to advise the Railroad Commission that the drilling of such injection well and the injection of such salt water or other such waste into such subsurface stratum will not en-

danger the fresh water strata in that area and that the formation or strata to be used for such salt water or other such waste disposal are not fresh water sands.

In accordance with the above reasoning, it is our opinion that under Article 7621b, Section 2-c the determination by the Texas Water Commission is not binding on the Railroad Commission but is merely advisory.

The first and second questions being answered in the negative, it becomes unnecessary to answer your third and fourth questions.

## S U M M A R Y

Article 7621b applies only to those wells which are drilled or used for the purpose of disposal and does not include those wells the purpose of which is to increase production from an oil or gas bearing stratum. Under Section 2-c of Article 7621b the determination of the Texas Water Commission is not binding on the Railroad Commission but merely advisory.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

BY: Joseph Trimble
Assistant Attorney General

JT:sc

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
Linward Shivers
Milton Richardson
Stanton Stone
F. R. Booth

APPROVED FOR THE ATTORNEY GENERAL
BY: Albert Jones